NS:JPM/DEL
F. #2020R00637

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

ANDREW RUSSO,
    also known as "Mush,"
ALBERT ALIMENA,
JOSEPH BELLANTONI,
BENJAMIN CASTELLAZZO,
    also known as "Benji,"
THOMAS COSTA,
RALPH DIMATTEO,
RICHARD FERRARA,
JOHN GLOVER,
VINCENT MARTINO,
THEODORE PERSICO, JR.,
    also known as "Teddy,"
JOHN RAGANO,
    also known as "Bazoo" and
    "Maniac,"
DOMENICK RICCIARDO,
VINCENT RICCIARDO,
    also known as "Vinny Unions,"
ERIN THOMPKINS and
MICHAEL UVINO,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. <u>21-466 (S-1) (DG)</u>
(T. 18, U.S.C., §§ 371, 894(a)(1),
922(g)(1), 924(a)(2), 924(d)(1),
981(a)(1)(C), 982(a)(1), 982(a)(2)(B),
982(a)(7), 982(b)(1), 1001(a)(1),
1001(a)(2), 1028(a)(7), 1028(b)(5),
1028(f), 1347, 1349, 1951(a), 1956(h),
1962(c), 1963(a), 1963(m), 2 and 3551
et seq.; T. 21, U.S.C., §§ 841(b)(1)(C),
846, 853(a) and 853(p); T. 28, U.S.C.,
§ 2461(c); T. 29, U.S.C., §§ 1111(a)
and 1111(b))

THE GRAND JURY CHARGES:

<u>INTRODUCTION</u>

    At all times relevant to this Superseding Indictment, unless otherwise indicated:

<u>The Enterprise</u>

1.      The Colombo organized crime family of La Cosa Nostra, including its leaders, members and associates, constituted an "enterprise," as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact (hereinafter, the "Colombo crime family" and the "Enterprise").   The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise.   The Colombo crime family engaged in, and its activities affected, interstate and foreign commerce.   The Colombo crime family was an organized criminal group that operated in the Eastern District of New York and elsewhere.

2.      La Cosa Nostra operated through organized crime families.   Five of these crime families — the Bonanno, Colombo, Gambino, Genovese and Lucchese crime families — were headquartered in New York City and supervised criminal activity in New York, in other areas of the United States and, in some instances, in other countries.   Another crime family, the Decavalcante crime family, operated principally in New Jersey, but from time to time also in New York City.

3.      The ruling body of La Cosa Nostra, known as the "Commission," consisted of leaders from each of the crime families.   The Commission convened from time to time to decide certain issues affecting all of the crime families, such as rules governing crime family membership.

4.      The Colombo crime family had a hierarchy and structure.   The head of the Colombo crime family was known as the "boss."   The Colombo crime family boss was assisted by an "underboss" and a counselor known as a "consigliere."   Together, the boss, the underboss and consigliere were the crime family's "administration."   With the assistance

2

of the underboss and consigliere, the boss was responsible for, among other things, setting policy and resolving disputes within and between La Cosa Nostra crime families and other criminal groups.   The administration further supervised, supported, protected and disciplined the lower-ranking participants in the crime family.   In return for their supervision and protection, the administration received part of the illegal earnings generated by the crime family.

5.     Members of the Colombo crime family served in an "acting" rather than "official" capacity in the administration on occasion due to another administration member's incarceration or ill health, or for the purpose of seeking to insulate another administration member from law enforcement scrutiny.   When this occurred, the member functioned in an "acting" capacity instead of an incarcerated or temporarily incapacitated Colombo family member who continued to hold the "official," as opposed to acting, position within the family.   Further, on occasion, the Colombo crime family was overseen by a "panel" of crime family members that did not include the boss, underboss and/or consigliere.

6.     Below the administration of the Colombo crime family were numerous "crews," also known as "regimes" and "decinas."   Each crew was headed by a "captain," also known as a "skipper," "caporegime" and "capodecina."   Each captain's crew consisted of "soldiers" and "associates."   The captain was responsible for supervising the criminal activities of his crew and providing the crew with support and protection.   In return, the captain often received a share of the crew's earnings.

7.     Only members of the Colombo crime family could serve as a boss, underboss, consigliere, captain or soldier.   Members of the crime family were referred to on occasion as "goodfellas" or "wiseguys," or as persons who had been "straightened out" or

who had their "button."   Associates were individuals who were not members of the crime

family, but who nonetheless engaged in criminal activity for, and under the protection of, the

crime family.

8.     Many requirements existed before an associate could become a member

of the Colombo crime family.   The Commission of La Cosa Nostra from time to time

limited the number of new members who could be added to a crime family.   An associate

was also required to be proposed for membership by an existing crime family member.

When the crime family's administration considered the associate worthy of membership, the

administration then circulated the proposed associate's name on a list given to other La Cosa

Nostra crime families, which the other crime families reviewed and either approved or

disapproved.   Unless there was an objection to the associate's membership, the crime family

then "inducted," or "straightened out," the associate as a member of the crime family in a

secret ceremony.   During the ceremony, the associate, among other things, swore allegiance

for life to the crime family above all else, even the associate's own family; swore, on penalty

of death, never to reveal the crime family's existence, criminal activities and other secrets;

and swore to follow all orders issued by the crime family boss, including swearing to commit

murder if the boss directed it.

<u>Methods and Means of the Enterprise</u>

9.     The principal purpose of the Colombo crime family was to generate

money for its members and associates.   This purpose was implemented by members and

associates of the Colombo crime family through various criminal activities, including drug

trafficking, robbery, extortion, fraud, illegal gambling and loansharking.   The members and

associates of the Colombo crime family also furthered the Enterprise's criminal activities by

threatening economic injury and using and threatening to use physical violence, including murder.

10.     Although the primary purpose of the Colombo crime family was to generate money for its members and associates, the members and associates at times used the resources of the family to settle personal grievances and vendettas, sometimes without the approval of higher-ranking members of the family.   For those purposes, members and associates of the Enterprise were asked and expected to carry out, among other crimes, acts of violence, including murder and assault.

11.     The members and associates of the Colombo crime family engaged in conduct designed to prevent government detection of their identities, their illegal activities and the location of proceeds of those activities.   That conduct included a commitment to murdering persons, particularly members or associates of organized crime families, who were perceived as potential witnesses against members and associates of the enterprise.

12.     Members and associates of the Colombo crime family often coordinated criminal activity with members and associates of other organized crime families.

<u>The Racketeering Defendants</u>

13.     The defendant ANDREW RUSSO, also known as "Mush," was the official boss of the Colombo crime family.

14.     The defendant BENJAMIN CASTELLAZZO, also known as "Benji," was the underboss of the Colombo crime family.

15.     The defendant THOMAS COSTA was an associate within the Colombo crime family.

16.     The defendant RALPH DIMATTEO was the consigliere of the Colombo crime family.

17.     The defendant RICHARD FERRARA was a captain and soldier within the Colombo crime family.

18.     The defendant THEODORE PERSICO, JR., also known as "Teddy," was a captain and soldier within the Colombo crime family.

19.     The defendant DOMENICK RICCIARDO was an associate within the Colombo crime family.

20.     The defendant VINCENT RICCIARDO, also known as "Vinny Unions," was a captain within the Colombo crime family.

21.     The defendant MICHAEL UVINO was an acting captain and soldier within the Colombo crime family.

The Criminal Schemes

22.     The defendants and their co-conspirators committed a variety of crimes — including extortion, loansharking, fraud and drug trafficking — that served principally to enrich themselves and to promote the continued operation of the Colombo crime family.

I.      The Extortion Scheme

23.     From approximately 2001 to September 2021, various defendants participated in an extortion scheme involving a labor union (the "Labor Union"), the identity of which is known to the Grand Jury, that represented workers principally in the construction industry and had members in New York, New Jersey, Pennsylvania and elsewhere.   The Labor Union was affiliated with several benefit plans for its members and their families,

including an employee welfare benefit plan and health care benefit program (the "Health Fund") that provided medical benefits, including dental, optical and pharmacy benefits.

24.     As part of the scheme, from approximately 2001 until September 2021, the defendants DOMENICK RICCIARDO and VINCENT RICCIARDO, also known as "Vinny Unions," together with others, devised and executed a scheme to obtain money by demanding and obtaining a portion of the salary of a senior official in the Labor Union, John Doe #1, an individual whose identity is known to the Grand Jury, through the actual and threatened use of force, violence and fear against John Doe #1.  VINCENT RICCIARDO falsely claimed that these payments were a pension for himself from the Labor Union.

25.     From approximately November 2019 to September 2021, members of the Colombo crime family, including the defendants and administration members ANDREW RUSSO, also known as "Mush," BENJAMIN CASTELLAZZO, also known as "Benji," and RALPH DIMATTEO, along with other members and associates of the Colombo crime family, including the defendants RICHARD FERRARA, THEODORE PERSICO, JR., also known as "Teddy," and MICHAEL UVINO, directed and assisted the defendants DOMENICK RICCIARDO and VINCENT RICCIARDO, also known as "Vinny Unions," in the extortion of the Labor Union, Health Fund and John Doe #1.  In addition, those defendants, together with others, also agreed and attempted to (1) force the Labor Union's management to make decisions that benefitted the Colombo crime family; (2) manipulate the selection of the Health Fund's vendors in order to have the Health Fund contract with entities and individuals associated with the Colombo crime family; and (3) divert more than $10,000 per month from the Health Fund's assets to the defendants and their co-conspirators.

II.     The Money Laundering Scheme

26.     From approximately November 2020 to September 2021, the

defendants ANDREW RUSSO, also known as "Mush," ALBERT ALIMENA, JOSEPH

BELLANTONI, BENJAMIN CASTELLAZZO, also known as "Benji," RALPH

DIMATTEO, RICHARD FERRARA, THEODORE PERSICO, JR., also known as "Teddy,"

VINCENT RICCIARDO, also known as "Vinny Unions," ERIN THOMPKINS and

MICHAEL UVINO, together with others, devised and executed a scheme to launder funds

derived from the extortion of the Health Fund and the theft and embezzlement of the Health

Fund's assets.   In furtherance of the money laundering scheme, the defendants, together

with others, agreed and attempted to send proceeds of these offenses through intermediary

companies and individuals to members and associates of the Colombo crime family.

III.    The Loansharking Scheme

27.     From approximately September 2020 to September 2021, the

defendants THOMAS COSTA, JOHN RAGANO, also known as "Bazoo" and "Maniac,"

VINCENT RICCIARDO, also known as "Vinny Unions," and MICHAEL UVINO, together

with others, agreed to, and did, extend and collect on loans through extortionate means.

28.     For example, in or about October 2020, the defendant MICHAEL

UVINO loaned $100,000 to John Doe #2, an individual whose identity is known to the

Grand Jury.   John Doe #2 was required to make payments on a weekly basis to UVINO and

the defendant VINCENT RICCIARDO, which equated to approximately 1.5 percent weekly

interest (or "vig") on the $100,000 loan.   Payment of the interest did not reduce the principal

owed.   Subsequently, in or about February 2021, the defendant JOHN RAGANO, also

known as "Bazoo" and "Maniac," loaned an additional $150,000 to John Doe #2, for which

John Doe #2 was required to make weekly payments to RAGANO and VINCENT RICCIARDO equating to approximately 1.5 percent weekly interest.   Again, payment of the interest did not reduce the principal owed.   The defendant THOMAS COSTA and a co-conspirator ("Co-Conspirator #1"), an individual whose identity is known to the Grand Jury, collected weekly payments from John Doe #2 for both loans.

IV.   The Fraudulent Safety Training Scheme

29.     From approximately January 2020 to September 2021, the defendants THOMAS COSTA, JOHN GLOVER, JOHN RAGANO, also known as "Bazoo" and "Maniac," and DOMENICK RICCIARDO, together with others, conspired to make false statements to the United States Department of Labor ("DOL") in connection with its administration of the Occupational Safety and Health Administration's ("OSHA") Outreach Training Program ("OTP"), as well as to relevant authorities in New York State and the New York City Department of Buildings ("DOB").   In furtherance of the scheme, the defendants agreed to, and did, procure and issue cards from the DOL that falsely represented that construction workers had completed required safety training courses at various training centers.   The defendants falsified paperwork claiming that training classes had been administered, when, in fact, they had not.

30.     In addition, and also in furtherance of the scheme, the defendant JOHN RAGANO, also known as "Bazoo" and "Maniac," together with others, established and operated occupational safety training schools in Franklin Square, New York (the "Franklin Square OSHA School") and in Ozone Park, New York (the "Ozone Park OSHA School"). The defendant JOHN GLOVER and Co-Conspirator #1, together with others, falsely stated and represented that required training had been provided at the Franklin Square OSHA

School and the Ozone Park OSHA School.   The defendants also used these locations to conduct meetings involving members of La Cosa Nostra, to store illegal narcotics and to store illegally obtained fireworks, among other things.

V.    Drug Trafficking

31.    From approximately October 2020 to September 2021, the defendants THOMAS COSTA, JOHN GLOVER, VINCENT MARTINO, JOHN RAGANO, also known as "Bazoo" and "Maniac," and VINCENT RICCIARDO, also known as "Vinny Unions," together with others, conspired to distribute marijuana in New York and Florida. In furtherance of the scheme, GLOVER, MARTINO and RAGANO purchased two samples of marijuana to determine which sample to buy in large quantities, and COSTA, MARTINO and RAGANO agreed to transport distribution-quantity shipments of marijuana from Queens, New York to Fort Lauderdale, Florida.   VINCENT RICCIARDO agreed to receive a percentage of the profits made by COSTA, MARTINO and RAGANO from the sale of this marijuana.

COUNT ONE
(Racketeering)

32.    The allegations contained in paragraphs one through 31 are realleged and incorporated as if fully set forth in this paragraph.

33.    In or about and between 2001 and September 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANDREW RUSSO, also known as "Mush," BENJAMIN CASTELLAZZO, also known as "Benji," THOMAS COSTA, RALPH DIMATTEO, RICHARD FERRARA, THEODORE PERSICO, JR., also known as "Teddy," DOMENICK RICCIARDO,

VINCENT RICCIARDO, also known as "Vinny Unions," and MICHAEL UVINO, together

with others, being persons employed by and associated with the Colombo crime family, an

enterprise that engaged in, and the activities of which affected, interstate and foreign

commerce, did knowingly and intentionally conduct and participate, directly and indirectly,

in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as

defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of the

racketeering acts set forth below.

RACKETEERING ACT ONE

(Extortion/Extortion Conspiracy – Labor Union and John Doe #1)

34.    The defendants named below committed the following acts, any one of

which alone constitutes Racketeering Act One:

A.    Federal Extortion Conspiracy

35.    In or about and between 2001 and September 2021, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants ANDREW RUSSO, BENJAMIN CASTELLAZZO, RALPH DIMATTEO,

RICHARD FERRARA, THEODORE PERSICO, JR., DOMENICK RICCIARDO,

VINCENT RICCIARDO and MICHAEL UVINO, together with others, did knowingly and

intentionally conspire to obstruct, delay and affect commerce, and the movement of articles

and commodities in commerce, by extortion, in that the defendants and others agreed to

obtain property, to wit: money from the operating accounts of the Labor Union, including

money to be paid as salary to John Doe #1, with the consent of the Labor Union and its

officers, agents and representatives, including John Doe #1, which consent was to be induced

by wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Section 1951(a).

B.      Federal Extortion

36.     In or about and between 2001 and September 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANDREW RUSSO, BENJAMIN CASTELLAZZO, RALPH DIMATTEO, RICHARD FERRARA, THEODORE PERSICO, JR., DOMENICK RICCIARDO, VINCENT RICCIARDO and MICHAEL UVINO, together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others obtained property, to wit: money from the operating accounts of the Labor Union, including money to be paid as salary to John Doe #1, with the consent of the Labor Union and its officers, agents and representatives, including John Doe #1, which consent was induced by wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

C.      State Law Extortion Conspiracy

37.     In or about and between 2001 and September 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANDREW RUSSO, BENJAMIN CASTELLAZZO, RALPH DIMATTEO, RICHARD FERRARA, THEODORE PERSICO, JR., DOMENICK RICCIARDO, VINCENT RICCIARDO and MICHAEL UVINO, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendants and others agreed to obtain property, to wit: money from the operating accounts of the Labor Union, including

12

money to be paid as salary to John Doe #1, by compelling and inducing the Labor Union and

its officers, agents and representatives, including John Doe #1, to deliver such property by

instilling in them a fear that, if the property were not so delivered, one or more persons

would cause physical injury to one or more persons in the future, in violation of New York

Penal Law Sections 155.40(2), 155.05(2)(e)(i) and 105.10.

      D.    <u>State Law Extortion</u>

      38.    In or about and between 2001 and September 2021, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants ANDREW RUSSO, BENJAMIN CASTELLAZZO, RALPH DIMATTEO,

RICHARD FERRARA, THEODORE PERSICO, JR., DOMENICK RICCIARDO,

VINCENT RICCIARDO and MICHAEL UVINO, together with others, did knowingly and

intentionally steal property by extortion, in that the defendants and others obtained property,

to wit: money from the operating accounts of the Labor Union, including money to be paid

as salary to John Doe #1, by compelling and inducing the Labor Union and its officers,

agents and representatives, including John Doe #1, to deliver such property by instilling in

them a fear that, if the property were not so delivered, one or more persons would (1) cause

physical injury to one or more persons in the future, and (2) perform an act which would not

in itself materially benefit the actor but which was calculated to harm another person

materially with respect to his health, safety, business, calling, career, financial condition,

reputation and personal relationships, in violation of New York Penal Law Sections

155.30(6), 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ix) and 20.00.

RACKETEERING ACT TWO
(Extortion Conspiracy/Attempted Extortion – Health Fund and Service Provider Vendors)

39.     The defendants named below committed the following acts, any one of which alone constitutes Racketeering Act Two:

A.     Federal Extortion Conspiracy

40.     In or about and between November 2019 and September 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANDREW RUSSO, BENJAMIN CASTELLAZZO, RALPH DIMATTEO, RICHARD FERRARA, THEODORE PERSICO, JR., DOMENICK RICCIARDO, VINCENT RICCIARDO and MICHAEL UVINO, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: (a) money to be paid from the Health Fund's trust and operating accounts, including payments to Health Fund contractors and vendors, including Co-Conspirator #1, and contract payments for vendor services not performed; (b) proceeds and profits resulting from vendor contracts with the Health Fund; and (c) commercial contracts between the Health Fund and its existing vendors, with the consent of the Health Fund, such vendors and their respective officers, agents and representatives, including John Doe #1, which consent was to be induced by wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Section 1951(a).

B.    Attempted Federal Extortion

41.    In or about and between November 2019 and September 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANDREW RUSSO, BENJAMIN CASTELLAZZO, RALPH DIMATTEO, RICHARD FERRARA, THEODORE PERSICO, JR., DOMENICK RICCIARDO, VINCENT RICCIARDO and MICHAEL UVINO, together with others, did knowingly and intentionally attempt to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others attempted to obtain property, to wit: (a) money to be paid from the Health Fund's trust and operating accounts, including payments to Health Fund contractors and vendors, including Co-Conspirator #1, and contract payments for vendor services not performed; (b) proceeds and profits resulting from vendor contracts with the Health Fund; and (c) commercial contracts between the Health Fund and its existing vendors, with the consent of the Health Fund, such vendors and their respective officers, agents and representatives, including John Doe #1, which consent was to be induced by wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

C.    State Law Extortion Conspiracy

42.    In or about and between November 2019 and September 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANDREW RUSSO, BENJAMIN CASTELLAZZO, RALPH DIMATTEO, RICHARD FERRARA, THEODORE PERSICO, JR., DOMENICK RICCIARDO, VINCENT RICCIARDO and MICHAEL UVINO, together with others, did

knowingly and intentionally conspire to steal property by extortion, in that the defendants

and others agreed to obtain property, to wit: (a) money to be paid from the Health Fund's

trust and operating accounts, including payments to Health Fund contractors and vendors,

including Co-Conspirator #1, and contract payments for vendor services not performed;

(b) proceeds and profits resulting from vendor contracts with the Health Fund; and

(c) commercial contracts between the Health Fund and its existing vendors, by compelling

and inducing the Health Fund, such vendors and their respective officers, agents and

representatives, including John Doe #1, to deliver such property by instilling in them a fear

that, if the property were not so delivered, one or more persons would cause physical injury

to one or more persons in the future, in violation of New York Penal Law Sections

155.40(2), 155.05(2)(e)(i) and 105.10.

     D.    <u>Attempted State Law Extortion</u>

       43.    In or about and between November 2019 and September 2021, both

dates being approximate and inclusive, within the Eastern District of New York and

elsewhere, the defendants ANDREW RUSSO, BENJAMIN CASTELLAZZO, RALPH

DIMATTEO, RICHARD FERRARA, THEODORE PERSICO, JR., DOMENICK

RICCIARDO, VINCENT RICCIARDO and MICHAEL UVINO, together with others, did

knowingly and intentionally attempt to steal property by extortion, in that the defendants and

others attempted to obtain property, to wit: (a) money to be paid from the Health Fund's trust

and operating accounts, including payments to Health Fund contractors and vendors,

including Co-Conspirator #1, and contract payments for vendor services not performed;

(b) proceeds and profits resulting from vendor contracts with the Health Fund; and

(c) commercial contracts between the Health Fund and its existing vendors, by compelling

and inducing the Health Fund, such vendors and their respective officers, agents and

representatives, including John Doe #1, to deliver such property by instilling in them a fear

that, if the property were not so delivered, one or more persons would cause physical injury

to one or more persons in the future, in violation of New York Penal Law Sections

155.40(2), 155.05(2)(e)(i), 110.00 and 20.00.

### RACKETEERING ACT THREE
(Conspiracy to Commit Fraud in Connection with Means of Identification)

44.     In or about and between January 2020 and September 2021, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants DOMENICK RICCIARDO and VINCENT RICCIARDO, together with others,

did knowingly and intentionally conspire to transfer, possess and use, without lawful

authority, and in and affecting interstate and foreign commerce, one or more means of

identification of one or more other persons, to wit: construction industry workers who sought

workplace safety training certifications from OSHA, an agency within the DOL, with the

intent to commit, and to aid and abet, and in connection with, unlawful activity that

constituted one or more violations of Federal law, to wit: Title 18, United States Code,

Section 1001(a) and Title 29, United States Code, Section 666(g), in and affecting interstate

and foreign commerce and, as a result of the offense, to obtain things of value aggregating

$1,000 or more during a one-year period, contrary to Title 18, United States Code, Section

1028(a)(7), in violation of Title 18, United States Code, Section 1028(f).

### RACKETEERING ACT FOUR
(Extortionate Collection of Credit Conspiracy and Extortionate Collection of Credit)

45.     The defendants named below committed the following acts, either one

of which alone constitutes Racketeering Act Four:

A.      Extortionate Collection of Credit Conspiracy

46.     In or about and between September 2020 and September 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants THOMAS COSTA, VINCENT RICCIARDO and MICHAEL UVINO, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect one or more extensions of credit from John Doe #2 and others, in violation of Title 18, United States Code, Section 894(a)(1).

B.      Extortionate Collection of Credit

47.     In or about and between September 2020 and September 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants THOMAS COSTA, VINCENT RICCIARDO and MICHAEL UVINO, together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit from John Doe #2, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

RACKETEERING ACT FIVE
(Conspiracy to Distribute Marijuana)

48.     In or about and between October 2020 and September 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants THOMAS COSTA and VINCENT RICCIARDO, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved a substance containing marijuana, a Schedule I

controlled substance, contrary to Title 21, United States Code, Section 841(a)(1), in violation

of Title 21, United States Code, Section 846.

RACKETEERING ACT SIX
(Money Laundering Conspiracy)

49.    In or about and between November 2020 and September 2021, both

dates being approximate and inclusive, within the Eastern District of New York and

elsewhere, the defendants ANDREW RUSSO, BENJAMIN CASTELLAZZO, RALPH

DIMATTEO, RICHARD FERRARA, THEODORE PERSICO, JR., VINCENT

RICCIARDO and MICHAEL UVINO, together with others, did knowingly and intentionally

conspire (i) to conduct one or more financial transactions affecting interstate and foreign

commerce, which in fact involved the proceeds of specified unlawful activity, to wit: Hobbs

Act extortion and extortion conspiracy, in violation of Title 18, United States Code, Section

1951(a), theft and embezzlement from pension and welfare funds, in violation of Title 18,

United States Code, Section 664, knowing that the property involved in the financial

transactions represented the proceeds of some form of unlawful activity (a) with the intent to

promote the carrying on of specified unlawful activity, contrary to Title 18, United States

Code, Section 1956(a)(1)(A)(i), and (b) knowing that the transactions were designed in

whole and in part to conceal and disguise the nature, location, source, ownership and control

of the proceeds of specified unlawful activity, contrary to Title 18, United States Code,

Section 1956(a)(1)(B)(i); and (ii) to engage in one or more monetary transactions in and

affecting interstate commerce in criminally derived property of a value greater than $10,000

that was derived from specified unlawful activity, to wit: Hobbs Act extortion and extortion

conspiracy, in violation of Title 18, United States Code, Section 1951(a), and theft and

19

embezzlement from pension and welfare funds, in violation of Title 18, United States Code, Section 664, contrary to Title 18, United States Code, Section 1957(a), in violation of Title 18, United States Code, Section 1956(h).

(Title 18, United States Code, Sections 1962(c) and 3551 et seq.)

COUNT TWO
(Hobbs Act Extortion Conspiracy — Labor Union and John Doe #1)

50.     The allegations contained in paragraphs one through 25 are realleged and incorporated as if fully set forth in this paragraph.

51.     In or about and between 2001 and September 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANDREW RUSSO, also known as "Mush," BENJAMIN CASTELLAZZO, also known as "Benji," RALPH DIMATTEO, RICHARD FERRARA, THEODORE PERSICO, JR., also known as "Teddy," DOMENICK RICCIARDO, VINCENT RICCIARDO, also known as "Vinny Unions," and MICHAEL UVINO, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: money from the operating accounts of the Labor Union, including money to be paid as salary to John Doe #1, with the consent of the Labor Union and its officers, agents and representatives, including John Doe #1, which consent was to be induced by wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a) and 3551 et seq.)

20

COUNT THREE
(Hobbs Act Extortion — Labor Union and John Doe #1)

52.     The allegations contained in paragraphs one through 25 are realleged and incorporated as if fully set forth in this paragraph.

53.     In or about and between 2001 and September 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANDREW RUSSO, also known as "Mush," BENJAMIN CASTELLAZZO, also known as "Benji," RALPH DIMATTEO, RICHARD FERRARA, THEODORE PERSICO, JR., also known as "Teddy," DOMENICK RICCIARDO, VINCENT RICCIARDO, also known as "Vinny Unions," and MICHAEL UVINO, together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others obtained property, to wit: money from the operating accounts of the Labor Union, including money to be paid as salary to John Doe #1, with the consent of the Labor Union and its officers, agents and representatives, including John Doe #1, which consent was induced by wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

COUNT FOUR
(Hobbs Act Extortion Conspiracy — Health Fund and Vendors)

54.     The allegations contained in paragraphs one through 25 are realleged and incorporated as if fully set forth in this paragraph.

55.     In or about and between November 2019 and September 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANDREW RUSSO, also known as "Mush," BENJAMIN

21

CASTELLAZZO, also known as "Benji," RALPH DIMATTEO, RICHARD FERRARA,

THEODORE PERSICO, JR., also known as "Teddy," DOMENICK RICCIARDO,

VINCENT RICCIARDO, also known as "Vinny Unions," and MICHAEL UVINO, together

with others, did knowingly and intentionally conspire to obstruct, delay and affect

commerce, and the movement of articles and commodities in commerce, by extortion, in that

the defendants and others agreed to obtain property, to wit: (a) money to be paid from the

Health Fund's trust and operating accounts, including payment to Health Fund contractors

and vendors, including Co-Conspirator #1, and contract payments for vendor services not

performed; (b) proceeds and profits resulting from vendor contracts with the Health Fund;

and (c) commercial contracts between the Health Fund and its existing vendors, with the

consent of the Health Fund, such vendors and their respective officers, agents and

representatives, including John Doe #1, which consent was to be induced by wrongful use of

actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a) and 3551 et seq.)

COUNT FIVE
(Attempted Hobbs Act Extortion – Health Fund and Vendors)

56.     The allegations contained in paragraphs one through 25 are realleged

and incorporated as if fully set forth in this paragraph.

57.     In or about and between November 2019 and September 2021, both

dates being approximate and inclusive, within the Eastern District of New York and

elsewhere, the defendants ANDREW RUSSO, also known as "Mush," BENJAMIN

CASTELLAZZO, also known as "Benji," RALPH DIMATTEO, RICHARD FERRARA,

THEODORE PERSICO, JR., also known as "Teddy," DOMENICK RICCIARDO,

22

VINCENT RICCIARDO, also known as "Vinny Unions," and MICHAEL UVINO, together

with others, did knowingly and intentionally attempt to obstruct, delay and affect commerce,

and the movement of articles and commodities in commerce, by extortion, in that the

defendants and others attempted to obtain property, to wit: (a) money to be paid from the

Health Fund's trust and operating accounts, including payment to Health Fund contractors

and vendors, including Co-Conspirator #1, and contract payments for vendor services not

performed; (b) proceeds and profits resulting from vendor contracts with the Health Fund;

and (c) commercial contracts between the Health Fund and its existing vendors, with the

consent of the Health Fund, such vendors and their respective officers, agents and

representatives, including John Doe #1, which consent was to be induced by wrongful use of

actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

COUNT SIX
(Conspiracy to Commit Fraud in Connection with Means of Identification)

58.      The allegations contained in paragraphs one through 21, 29 and 30 are

realleged and incorporated as if fully set forth in this paragraph.

59.      In or about and between January 2020 and September 2021, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants JOHN GLOVER, JOHN RAGANO, also known as "Bazoo" and "Maniac,"

DOMENICK RICCIARDO and VINCENT RICCIARDO, also known as "Vinny Unions,"

together with others, did knowingly and intentionally conspire to transfer, possess and use,

without lawful authority, and in and affecting interstate and foreign commerce, one or more

means of identification of one or more other persons, to wit: construction industry workers

23

seeking workplace safety training certifications from OSHA, an agency within the DOL, with the intent to commit, and to aid and abet, and in connection with, unlawful activity that constituted one or more violations of Federal law, to wit: Title 18, United States Code, Section 1001(a) and Title 29, United States Code, Section 666(g), in and affecting interstate and foreign commerce and, as a result of the offense, to obtain things of value aggregating $1,000 or more during a one-year period, contrary to Title 18, United States Code, Section 1028(a)(7).

(Title 18, United States Code, Sections 1028(f) and 3551 et seq.)

## COUNT SEVEN
(Fraud in Connection with Means of Identification)

60.     The allegations contained in paragraphs one through 21, 29 and 30 are realleged and incorporated as if fully set forth in this paragraph.

61.     In or about and between January 2020 and September 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOHN GLOVER, JOHN RAGANO, also known as "Bazoo" and "Maniac," DOMENICK RICCIARDO and VINCENT RICCIARDO, also known as "Vinny Unions," together with others, did knowingly and intentionally transfer, possess and use, without lawful authority, and in and affecting interstate and foreign commerce, one or more means of identification of one or more other persons, to wit: construction industry workers seeking workplace safety training certifications from OSHA, an agency within the DOL, with the intent to commit, and to aid and abet, and in connection with, unlawful activity that constituted one or more violations of Federal law, to wit: Title 18, United States Code, Section 1001(a) and Title 29, United States Code, Section 666(g), in and affecting interstate

and foreign commerce and, as a result of the offense, obtained things of value aggregating $1,000 or more during a one-year period.

(Title 18, United States Code, Sections 1028(a)(7), 2 and 3551 et seq.)

## COUNT EIGHT
(Conspiracy to Make False Statements)

62.     The allegations contained in paragraphs one through 21, 29 and 30 are realleged and incorporated as if fully set forth in this paragraph.

63.     In or about and between January 2020 and September 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants THOMAS COSTA, JOHN GLOVER, VINCENT MARTINO JOHN RAGANO, also known as "Bazoo" and "Maniac," DOMENICK RICCIARDO and VINCENT RICCIARDO, also known as "Vinny Unions," together with others, did knowingly and willfully conspire to make one or more materially false, fictitious and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit: the administration by the DOL of OSHA's OTP, in that the defendants, together with others, agreed to state and represent that specified individuals had attended specified OTP courses, when, in fact, as the defendants then and there well knew and believed, said individuals had not attended said courses, contrary to Title 18, United States Code, Section 1001(a)(2).

64.     In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants committed and caused the commission of, among others, the following:

## OVERT ACTS

(a)     On or about July 6, 2020, GLOVER submitted an OTP report to OSHA that falsely certified that a 30-hour construction training program had been conducted at the Franklin Square OSHA School.

(b)     On or about October 1, 2020, DOMENICK RICCIARDO provided an undercover law enforcement officer with a blank test form required to be taken to obtain an OSHA card, an answer sheet containing the answers for that test and a sign-in sheet for the class roster.

(c)     On or about October 24, 2020, GLOVER submitted an OTP report to OSHA that falsely certified that a 30-hour construction training program had been provided at the Ozone Park OSHA School.

(d)     On or about October 26, 2020, DOMENICK RICCIARDO agreed to sell an OSHA 30-hour training card to an undercover law enforcement officer who had not attended any OSHA OTP training classes.

(e)     On or about December 7, 2020, VINCENT RICCIARDO referred an individual seeking an OSHA training certification to a co-conspirator who worked at the Franklin Square OSHA School, for the purpose of obtaining a false certification.

(f)     In or about and between December 14, 2020 and December 17, 2020, COSTA and MARTINO supplied their identifications to a co-conspirator in order to falsely claim to have attended OSHA training classes for a safety certification.

(g)     On or about March 11, 2021, VINCENT RICCIARDO spoke with an employee of Sterling National Bank regarding a joint account with a co-conspirator and falsely stated that he and the co-conspirator provided job safety and OSHA training.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNT NINE
### (Making False Statements)

65.     The allegations contained in paragraphs one through 21, 29 and 30 are realleged and incorporated as if fully set forth in this paragraph.

66.     On or about July 6, 2020, within the Eastern District of New York and elsewhere, the defendant JOHN GLOVER, together with others, did knowingly and willfully make one or more materially false, fictitious and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit: the administration by the DOL of OSHA's OTP, in that the defendant stated and represented that specified individuals had attended specified OTP courses, when, in fact, as the defendant then and there well knew and believed, said individuals had not attended said courses.

(Title 18, United States Code, Sections 1001(a)(2), 2 and 3551 et seq.)

## COUNT TEN
### (Extortionate Collection of Credit Conspiracy)

67.     The allegations contained in paragraphs one through 21, 27 and 28 are realleged and incorporated as if fully set forth in this paragraph.

68.     In or about and between September 2020 and September 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants THOMAS COSTA, JOHN RAGANO, also known as "Bazoo" and

"Maniac," VINCENT RICCIARDO, also known as "Vinny Unions," and MICHAEL

UVINO, together with others, did knowingly and intentionally agree to participate in the use

of extortionate means to collect one or more extensions of credit from John Doe #2.

(Title 18, United States Code, Sections 894(a)(1) and 3551 et seq.)

COUNT ELEVEN
(Extortionate Collection of Credit)

69.     The allegations contained in paragraphs one through 21, 27 and 28 are

realleged and incorporated as if fully set forth in this paragraph.

70.     In or about and between September 2020 and September 2021, both

dates being approximate and inclusive, within the Eastern District of New York and

elsewhere, the defendants THOMAS COSTA, JOHN RAGANO, also known as "Bazoo" and

"Maniac," VINCENT RICCIARDO, also known as "Vinny Unions," and MICHAEL

UVINO, together with others, did knowingly and intentionally participate in the use of

extortionate means to collect and attempt to collect one or more extensions of credit from

John Doe #2.

(Title 18, United States Code, Sections 894(a)(1), 2 and 3551 et seq.)

COUNT TWELVE
(Conspiracy to Distribute and Possess with Intent to Distribute Marijuana)

71.     The allegations contained in paragraphs one through 21 and 31 are

realleged and incorporated as if fully set forth in this paragraph.

72.     In or about and between October 2020 and September 2021, both dates

being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants THOMAS COSTA, JOHN GLOVER, VINCENT MARTINO, JOHN RAGANO,

also known as "Bazoo" and "Maniac," and VINCENT RICCIARDO, also known as "Vinny

28

Unions," together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved a substance containing marijuana, a Schedule I controlled substance, contrary to Title 21, United States Code, Section 841(a)(1).

(Title 21, United States Code, Sections 846 and 841(b)(1)(C); Title 18, United States Code, Sections 3551 et seq.)

COUNT THIRTEEN<br>(Money Laundering Conspiracy – Health Fund)

73.    The allegations contained in paragraphs one through 26 are realleged and incorporated as if fully set forth in this paragraph.

74.    In or about and between November 2020 and September 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANDREW RUSSO, also known as "Mush," ALBERT ALIMENA, JOSEPH BELLANTONI, BENJAMIN CASTELLAZZO, also known as "Benji," RALPH DIMATTEO, RICHARD FERRARA, THEODORE PERSICO, JR., also known as "Teddy," VINCENT RICCIARDO, also known as "Vinny Unions," ERIN THOMPKINS and MICHAEL UVINO, together with others, did knowingly and intentionally conspire (i) to conduct one or more financial transactions affecting interstate and foreign commerce, which in fact involved the proceeds of specified unlawful activity, to wit: Hobbs Act extortion and extortion conspiracy, in violation of Title 18, United States Code, Section 1951(a), theft and embezzlement from pension and welfare funds, in violation of Title 18, United States Code, Section 664, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity (a) with the

intent to promote the carrying on of specified unlawful activity, contrary to Title 18, United

States Code, Section 1956(a)(1)(A)(i), and (b) knowing that the transactions were designed

in whole and in part to conceal and disguise the nature, location, source, ownership and

control of the proceeds of specified unlawful activity, contrary to Title 18, United States

Code, Section 1956(a)(1)(B)(i); and (ii) to engage in one or more monetary transactions in

and affecting interstate commerce in criminally derived property of a value greater than

$10,000 that was derived from specified unlawful activity, to wit: Hobbs Act extortion and

extortion conspiracy, in violation of Title 18, United States Code, Section 1951(a), and theft

and embezzlement from pension and welfare funds, in violation of Title 18, United States

Code, Section 664, contrary to Title 18, United States Code, Section 1957(a).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## COUNT FOURTEEN
(Conspiracy to Steal and Embezzle Health Care Benefit Funds)

75.     The allegations contained in paragraphs one through 26 are realleged

and incorporated as if fully set forth in this paragraph.

76.     In or about and between November 2020 and September 2021, both

dates being approximate and inclusive, within the Eastern District of New York and

elsewhere, the defendants ANDREW RUSSO, also known as "Mush," ALBERT

ALIMENA, JOSEPH BELLANTONI, BENJAMIN CASTELLAZZO, also known as

"Benji," RALPH DIMATTEO, RICHARD FERRARA, THEODORE PERSICO, JR., also

known as "Teddy," VINCENT RICCIARDO, also known as "Vinny Unions," ERIN

THOMPKINS and MICHAEL UVINO, together with others, did knowingly and willfully

conspire to commit offenses against the United States, to wit: (i) to embezzle, steal and

30

unlawfully and willfully abstract and convert to their own use and to the use of another the moneys, funds, securities, premiums credits, property and other assets of an employee welfare benefit plan, and of funds connected therewith, to wit: moneys of the Health Fund expended for the payment of vendor services not performed, contrary to Title 18 United States Code, Section 664; and (ii) to embezzle, steal and otherwise without authority convert to the use of a person other than the rightful owner, and to knowingly and intentionally misapply moneys, funds, securities, premiums, credits, property and other assets of a health care benefit program, in an amount in excess of $100, to wit: moneys of the Health Fund expended for the payment of vendor services not performed, contrary to Title 18, United States Code, Section 669(a).

77.     In furtherance of the conspiracy and to effect its objects, the defendants did commit and cause the commission of, among others, the following:

OVERT ACTS

(a)     On or about January 23, 2021, VINCENT RICCIARDO placed a telephone call to THOMPKINS in which they discussed confidential materials obtained from the Health Fund.

(b)     On or about January 28, 2021, DIMATTEO placed a telephone call to VINCENT RICCIARDO and discussed whether a consultant to the Health Fund had been terminated.

(c)     On or about January 28, 2021, VINCENT RICCIARDO placed a telephone call to Co-Conspirator-1 and told Co-Conspirator-1 that VINCENT RICCIARDO had received a call from "number three," a reference to Colombo crime family consigliere DIMATTEO, and discussed the Health Fund.

(d)     On or about February 12, 2021, THOMPKINS told VINCENT RICCIARDO that ALIMENA had given her handwritten notes to retype "because he doesn't want it in his handwriting."

(e)     On or about February 13, 2021, ALIMENA placed a telephone call to VINCENT RICCIARDO to discuss the Health Fund.

(f)     On or about February 21, 2021, ALIMENA placed a telephone call to VINCENT RICCIARDO to discuss the Health Fund and told RICCIARDO to download an encrypted messaging application for his cellular telephone.

(g)     On or about March 5, 2021, ALIMENA sent an email to John Doe #1 indicating ALIMENA's intent to submit a bid to become the Health Fund's third-party administrator.

(h)     On or about March 16, 2021, VINCENT RICCIARDO met with FERRARA and DIMATTEO in Brooklyn, New York to provide them with information about a consultant to the Health Fund.

(i)     On or about March 16, 2021, FERRARA called PERSICO to arrange a meeting to discuss the Labor Union and the Health Fund.

(j)     On or about March 24, 2021, RUSSO met with VINCENT RICCIARDO at RUSSO's residence in Glen Head, New York (the "RUSSO Residence") to discuss the removal of a consultant to the Health Fund.

(k)     On or about March 29, 2021, PERSICO, RUSSO and FERRARA met at the RUSSO Residence.

(l)     On April 1, 2021, at approximately 10:25 a.m., PERSICO, FERRARA, VINCENT RICCIARDO and UVINO met in Staten Island, New York to discuss the removal of a consultant to the Health Fund.

(m)    On or about April 6, 2021, ALIMENA met with VINCENT RICCIARDO and Co-Conspirator #1 in Fort Lauderdale, Florida, to discuss embezzling money from Health Fund vendor contracts.

(n)    On or about April 11, 2021, RUSSO met with FERRARA and others at the RUSSO Residence Glen Head, New York to discuss the removal of a consultant to the Health Fund.

(o)    On or about April 13, 2021, CASTELLAZZO met with VINCENT RICCIARDO at an autobody shop in Brooklyn, New York to discuss the removal of a consultant to the Health Fund.

(p)    On April 20, 2021, THOMPKINS met with VINCENT RICCIARDO and Co-Conspirator #1 to discuss the prices that a fund administrator could charge per plan participant.

(q)    On or about April 22, 2021, BELLANTONI and VINCENT RICCIARDO met at a diner in Bohemia, New York and discussed how to remove a consultant from the Health Fund.

(r)     On or about April 26, 2021, VINCENT RICCIARDO met with THOMPKINS and asked her to review the Health Fund's request for proposal for a fund administrator.

(s)     On or about April 28, 2021, JOSEPH BELLANTONI met with co-conspirators at a diner in Franklin Square, New York and discussed the manner and frequency of kickbacks that would be provided for a pharmacy benefit manager contract.

(t)     On or about May 5, 2021, VINCENT RICCIARDO and BELLANTONI met at a diner in Bohemia, New York and discussed the bidding procedure for the pharmacy benefits manager and dental contracts and the termination of an attorney who represented the Labor Union and the Health Fund.   During the conversation, BELLANTONI and VINCENT RICCIARDO discussed ALIMENA's affiliation with the "Westside," a reference to the Genovese crime family.

(u)     On or about May 11, 2021, VINCENT RICCIARDO met with UVINO and Co-Conspirator #1 and told them that VINCENT RICCIARDO had terminated a Labor Union employee and intended to terminate other employees of the Labor Union and the Health Fund.

(v)     On or about June 2, 2021, ALIMENA placed a WhatsApp call to Co-Conspirator #1 to discuss a bid for the Heath Fund's third-party administrator and stated, "This is not, this is not going to go down easy, and ah, you know, it's going to facilitate a full scale investigation just so you know."

(w)     On or about June 4, 2021, a vendor that managed pharmacy benefits for health funds and was associated with BELLANTONI submitted a response to the Health Fund's request for proposal.

(x)     On or about July 20, 2021, UVINO met with Co-Conspirator #1 to discuss the termination of an attorney who represented the Labor Union and the Health Fund and other employees.

(y)     On or about August 5, 2021, ALIMENA met with BELLANTONI and others at a restaurant in Westbury, New York and discussed the removal of the Health Fund's consultant and legal counsel.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

COUNT FIFTEEN
(Health Care Fraud Conspiracy)

78.     The allegations contained in paragraphs one through 26 are realleged and incorporated as if fully set forth in this paragraph.

79.     In or about and between November 2020 and September 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANDREW RUSSO, also known as "Mush," ALBERT ALIMENA, JOSEPH BELLANTONI, BENJAMIN CASTELLAZZO, also known as "Benji," RALPH DIMATTEO, RICHARD FERRARA, THEODORE PERSICO, JR., also known as "Teddy," VINCENT RICCIARDO, also known as "Vinny Unions," ERIN THOMPKINS and MICHAEL UVINO, together with others, did knowingly and intentionally conspire to execute a scheme and artifice to defraud a health care benefit program, as defined in Title 18, United States Code, Section 24(b), to wit: the Health Fund, and to obtain, by means of one or more materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and

control of, the Health Fund, in connection with the delivery of and payment for health care

benefits, items and services, contrary to Title 18, United States Code, Section 1347.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

COUNT SIXTEEN<br>(Attempted Health Care Fraud)

80.     The allegations contained in paragraphs one through 26 are realleged

and incorporated as if fully set forth in this paragraph.

81.     In or about and between November 2020 and September 2021, both

dates being approximate and inclusive, within the Eastern District of New York and

elsewhere, the defendants ANDREW RUSSO, also known as "Mush," ALBERT

ALIMENA, JOSEPH BELLANTONI, BENJAMIN CASTELLAZZO, also known as

"Benji," RALPH DIMATTEO, RICHARD FERRARA, THEODORE PERSICO, JR., also

known as "Teddy," VINCENT RICCIARDO, also known as "Vinny Unions," ERIN

THOMPKINS and MICHAEL UVINO, together with others, did knowingly and

intentionally execute and attempt to execute a scheme and artifice to defraud a health care

benefit program, as defined in Title 18, United States Code, Section 24(b), to wit: the Health

Fund, and to obtain, by means of one or more materially false and fraudulent pretenses,

representations and promises, money and property owned by, and under the custody and

control of, the Health Fund, in connection with the delivery of and payment for health care

benefits, items and services.

(Title 18, United States Code, Sections 1347, 2 and 3551 et seq.)

## COUNT SEVENTEEN
(Concealing Material Information)

82.     In or about and between November 2020 and September 2021, both

dates being approximately and inclusive, within the Eastern District of New York and

elsewhere, the defendant THEODORE PERSICO, JR., also known as "Teddy," did

knowingly and willfully falsify, conceal and cover up by trick, scheme and device one or

more material facts in a matter within the jurisdiction of the judicial branch of the

Government of the United States, to wit: the United States Probation Office for the Eastern

District of New York's supervision of PERSICO while on supervised release, in that

PERSICO hid and concealed his communications and interactions with members of the

Colombo crime family with whom he was prohibited from communicating and interacting,

and despite being obligated to report such communications and interactions to a United

States Probation Officer within 48 hours.

(Title 18, United States Code, Sections 1001(a)(1) and 3551 et seq.)

## COUNT EIGHTEEN
(Material False Statements)

83.     On or about December 7, 2020, within the Eastern District of New

York and elsewhere, the defendant THEODORE PERSICO, JR., also known as "Teddy," did

knowingly and willfully make one or more materially false, fictitious and fraudulent

statements and representations in a matter within the jurisdiction of the judicial branch of the

Government of the United States, to wit: the United States Probation Office for the Eastern

District of New York's supervision of PERSICO while on supervised release, in that

PERSICO stated and represented that he had not associated with any members of the

Colombo crime family, when, in fact, as the defendant then and there well knew and

believed, the defendant had met, spoken and associated with the defendants ANDREW

RUSSO, also known as "Mush," BENJAMIN CASTELLAZZO, also known as "Benji,"

RALPH DIMATTEO, RICHARD FERRARA, VINCENT RICCIARDO, also known as

"Vinny Unions," and others whom he knew to be members and associates of the Colombo

crime family.

(Title 18, United States Code, Sections 1001(a)(2) and 3551 et seq.)

COUNT NINETEEN
(Violation of Disqualification by Person Prohibited from Holding Certain Positions)

84.     In or about and between November 2020 and September 2021, both

dates being approximate and inclusive, within the Eastern District of New York and

elsewhere, the defendant VINCENT RICCIARDO, also known as "Vinny Unions," having

been convicted of a disqualifying crime, did knowingly and intentionally serve as a fiduciary,

representative of and adviser to an employee benefit plan subject to Title I of the Employee

Retirement Income Security Act ("ERISA"), and in capacities that involved decision making

authority and control of the moneys, funds, assets and property of an employee benefit plan,

to wit: the Health Fund, an employee benefit plan subject to Title I of ERISA, Title 29,

United States Code, Sections 1001 et seq., without the defendant's revoked citizenship rights

having been fully restored, without a reduction by the sentencing court of the length of the

period of disqualification, and without a determination by a United States District Court

Judge that such service would not be contrary to the purposes of ERISA, as codified in

Subchapter I of Chapter 18 of Title 29 of the United States Code.

(Title 29, United States Code, Sections 1111(a) and 1111(b); Title 18, United States Code, Sections 3551 et seq.)

38

## COUNT TWENTY
(Transportation and Possession of Ammunition)

85.     In or about April 2021, within the Eastern District of New York and

elsewhere, the defendants THOMAS COSTA and VINCENT RICCIARDO, also known as

"Vinny Unions," together with others, knowing that they had previously been convicted in a

court of one or more crimes punishable by a term of imprisonment exceeding one year, did

knowingly and intentionally transport and possess in and affecting commerce ammunition, to

wit: .380 caliber ammunition.

(Title 18, United States Code, Sections 922(g)(1), 924(a)(2), 2 and

3551 et seq.)

## COUNT TWENTY-ONE
(Felon in Possession of a Firearm and Ammunition)

86.     In or about September 2021, within the Eastern District of New York

and elsewhere, the defendant RICHARD FERRARA, knowing that he had previously been

convicted in a court of one or more crimes punishable by a term of imprisonment exceeding

one year, did knowingly and intentionally possess in and affecting commerce a firearm, to

wit: a Taurus model PT111 Millennium semiautomatic pistol with a defaced serial number,

and ammunition, to wit: Federal cartridges and Winchester cartridges.

(Title 18, United States Code, Sections 922(g)(1), 924(a)(2) and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT ONE

87.     The United States hereby gives notice to the defendants charged in

Count One that, upon their conviction of such offense, the government will seek forfeiture in

accordance with Title 18, United States Code, Section 1963(a), which requires any person

convicted of such offense to forfeit: (a) any interest the person acquired or maintained in violation of Title 18, United States Code, Section 1962; (b) any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which the person has established, operated, controlled, conducted or participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and (c) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity, in violation of Title 18, United States Code, Section 1962.

88.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

> (a)     cannot be located upon the exercise of due diligence;
>
> (b)     has been transferred or sold to, or deposited with, a third party;
>
> (c)     has been placed beyond the jurisdiction of the court;
>
> (d)     has been substantially diminished in value; or
>
> (e)     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 1963(a) and 1963(m))

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS TWO THROUGH FIVE,
TEN AND ELEVEN

89.     The United States hereby gives notice to the defendants charged in

Counts Two through Five, Ten and Eleven that, upon their conviction of any such offense,

the government will seek forfeiture in accordance with Title 18, United States Code, Section

981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person

convicted of such offense to forfeit any property, real or personal, constituting or derived

from proceeds obtained directly or indirectly as a result of such offense.

90.     If any of the above-described forfeitable property, as a result of any act

or omission of the defendants:

> (a)     cannot be located upon the exercise of due diligence;
>
> (b)     has been transferred or sold to, or deposited with, a third party;
>
> (c)     has been placed beyond the jurisdiction of the court;
>
> (d)     has been substantially diminished in value; or
>
> (e)     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

to seek forfeiture of any other property of the defendants up to the value of the forfeitable

property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States

Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS SIX AND SEVEN

91.     The United States hereby gives notice to the defendants charged in
Counts Six and Seven that, upon their conviction of either such offense, the government will
seek forfeiture in accordance with: (a) Title 18, United States Code, Section 982(a)(2)(B),
which requires any person convicted of such offenses to forfeit any property constituting, or
derived from, proceeds obtained directly or indirectly as a result of such offense; and
(b) Title 18, United States Code, Section 1028(b)(5), which requires any person convicted of
such offense to forfeit any personal property used or intended to be used to commit the
offense.

92.     If any of the above-described forfeitable property, as a result of any act
or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be
divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),
as incorporated by Title 18, United States Code, Sections 982(b)(1) and 1028(g), to seek

forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(2)(B), 982(b)(1) and 1028(b)(5); Title 21, United States Code, Section 853(p))

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNT TWELVE

93.     The United States hereby gives notice to the defendants charged in Count Twelve that, upon their conviction of such offense, the government will seek forfeiture in accordance with Title 21, United States Code, Section 853(a), which requires any person convicted of such offense to forfeit: (a) any property constituting, or derived from, any proceeds obtained directly or indirectly as the result of such offense; and (b) any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offense.

94.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

to seek forfeiture of any other property of the defendants up to the value of the forfeitable

property described in this forfeiture allegation.

(Title 21, United States Code, Sections 853(a) and 853(p))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT THIRTEEN

95.     The United States hereby gives notice to the defendants charged in

Count Thirteen that, upon their conviction of such offense, the government will seek

forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires

any person convicted of such offense to forfeit any property, real or personal, involved in

such offense, or any property traceable to such property.

96.     If any of the above-described forfeitable property, as a result of any act

or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any

44

other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS FOURTEEN THROUGH SIXTEEN AND NINETEEN

97.     The United States hereby gives notice to the defendants charged in Counts Fourteen through Sixteen and Nineteen that, upon their conviction of any such offenses, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(7), which requires any person convicted of a federal health care offense to forfeit property, real or personal, that constitutes, or is derived directly or indirectly from, gross proceeds traceable to the commission of such offenses.

98.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

      (a)     cannot be located upon the exercise of due diligence;

      (b)     has been transferred or sold to, or deposited with, a third party;

      (c)     has been placed beyond the jurisdiction of the court;

      (d)     has been substantially diminished in value; or

      (e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any

other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(7) and 982(b)(1); Title 21, United States Code, Section 853(p))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS TWENTY AND TWENTY-ONE

99.     The United States hereby gives notice to the defendants charged in Counts Twenty and Twenty-One that, upon their conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 924(d)(1) and Title 28, United States Code, Section 2461(c), which require the forfeiture of any firearm or ammunition involved in or used in any knowing violation of Title 18, United States Code, Section 922, including but not limited to the following items seized on or about September 15, 2021 in Brooklyn, New York:

(i) one TAURUS, model PT111 Millennium, semiautomatic pistol with a defaced serial number;

(ii) 9 mm Luger caliber, Federal ammunition;

(iii) 9 mm Luger caliber, Winchester ammunition; and

(iv) 9 mm magazine.

100.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

       (d)      has been substantially diminished in value; or

       (e)      has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

to seek forfeiture of any other property of the defendants up to the value of the forfeitable

property described in this forfeiture allegation.

       (Title 18, United States Code, Section 924(d)(1); Title 21, United States Code,

Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

_____

FOREPERSON

_____

BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F.#: 2020R00637
FORM DBD-34
JUN. 85

No.    21-CR-466 (S-1)(DG)

# UNITED STATES DISTRICT COURT

### EASTERN *District of* NEW YORK

### CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

ANDREW RUSSO, also known as "Mush," ALBERT ALIMENA, JOSEPH
BELLANTONI, BENJAMIN CASTELLAZZO, also known as "Benji," THOMAS
COSTA, RALPH DIMATTEO, RICHARD FERRARA, JOHN GLOVER,
VINCENT MARTINO, THEODORE PERSICO, JR., also known as "Teddy,"
JOHN RAGANO, also known as "Bazoo" and "Maniac," DOMENICK
RICCIARDO, VINCENT RICCIARDO, also known as "Vinny Unions," ERIN
THOMPKINS and MICHAEL UVINO,

Defendants.

## SUPERSEDING INDICTMENT

(T. 18, U.S.C., §§ 371, 894(a)(1), 922(g)(1), 924(a)(2), 924(d)(1), 981(a)(1)(C),
982(a)(1), 982(a)(2)(B), 982(a)(7), 982(b)(1), 1001(a)(1), 1001(a)(2),
1028(a)(7), 1028(b)(5), 1028(f), 1347, 1349, 1951(a), 1956(h), 1962(c), 1963(a),
1963(m), 2 and 3551 et seq.; T. 21, U.S.C., §§ 841(b)(1)(C), 846, 853(a) and
853(p); T. 28, U.S.C., § 2461(c); T. 29, U.S.C., §§ 1111(a) and 1111(b))

*A true bill.*

_____                          _____
                                                                                          *Foreperson*

*Filed in open court this* _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _*day,*
*of* _ _ _ _ _ _ _ _ _ _ _ *A.D. 20* _ _ _ _ _    _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
                                                                                                               *Clerk*

*Bail, $*_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

***James P. McDonald and Devon Lash, Assistant U.S. Attorneys***
***(718) 254-7000***